# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CIVIL CASE NO. 1:10-cv-00045-MR
### [Criminal Case No. 1:07-cr-00085-MR-1]

| | | |
|---|---|---|
| **BOBBY DWAYNE WARREN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **MEMORANDUM OF** |
| | ) | **DECISION AND ORDER** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on the Petitioner's Motion to Vacate, Set Aside or Correct Sentence, filed pursuant to 28 U.S.C. § 2255 [Doc. 2] and the Respondent's Motion for Summary Judgment [Doc. 9]. For the reasons that follow, Respondent's motion will be granted and Petitioner's Section 2255 motion will be denied and dismissed.

## I.    FACTUAL BACKGROUND

On December 18, 2007, Petitioner was charged in a Superseding Bill of Indictment with seven counts of knowingly transporting and shipping child pornography, in violation of 18 U.S.C. §§ 2252(a)(1) & (b)(1) (Counts One through Seven). [Criminal Case No. 1:07-cr-00085-MR-1, Doc. 19: Superseding Bill of Indictment at 1-4]. The Petitioner was also charged

with knowingly possessing a computer hard drive which contained child pornography, in violation of 18 U.S.C. § 2252(a)(4) and (b)(2) (Count Eight), and with one count of producing child pornography, in violation of 18 U.S.C. § 2251(a) (Count Nine).  [Id. at 4-5].

On December 21, 2007, Petitioner entered into a written Plea Agreement with the Government. In this Agreement, Petitioner agreed to enter voluntary pleas of guilty to Counts One and Two of the Superseding Bill of Indictment, and the Government agreed to dismiss the remaining counts. [Criminal Case No. 1:07-cr-00085-MR-1, Doc. 20: Plea Agreement at 1].  Although Petitioner pled guilty only to two of the counts with which he was charged, he explicitly agreed that "the Court [could] consider any such dismissed counts and all pertinent information as 'relevant conduct'" under the Sentencing Guidelines.  [Id.].  Additionally, Petitioner acknowledged in the Plea Agreement that the statutory mandatory minimum sentence applicable to "*each count*" was no less than five years' imprisonment and no more than 20 years' imprisonment and that any estimate as to his sentence "from any source, including defense counsel . . . [was] a prediction rather than a promise, and that the Court ha[d] the final discretion to impose any sentence *up to the statutory maximum for each count.*"  [Id. at 2 (emphasis added)]. With respect to Petitioner's right to

appeal, Petitioner and his counsel warranted in the Plea Agreement that they had discussed: (1) his right to contest a conviction and/or sentence through an appeal or post-conviction proceeding; (2) whether or not there were potential issues that might be relevant to an appeal or post-conviction action; and (3) the possible impact of any such issue on Petitioner's decision to enter into the Plea Agreement prior to entering the Agreement. [Id. at 4]. After acknowledging these discussions, Petitioner agreed to "waive all such rights to contest the conviction and/or the sentence," except for claims of ineffective assistance of counsel, prosecutorial misconduct, or the reasonableness of any upward variance from the applicable Guideline range. [Id.].

United States Magistrate Judge Howell conducted an initial appearance on the Superseding Bill of Indictment and a plea hearing and colloquy pursuant to Federal Rule of Criminal Procedure 11 on December 28, 2007. Petitioner, through his attorney, David Belser, waived arraignment and entered a temporary plea of not guilty, prior to proceeding with the Rule 11 proceeding. [Criminal Case No. 1:07-cr-00085-MR-1, Doc. 41: Rule 11 Tr. at 3-4]. During the colloquy, Petitioner affirmed that he had reviewed the Superseding Bill of Indictment and the Plea Agreement with his counsel. [Id. at 12]. Judge Howell then recited the

charges to which Petitioner was pleading guilty, including the statutory minimum and maximum terms of imprisonment applicable to each of the two offenses. [Id. at 13-18]. In reviewing the elements of the offense and the maximum penalties Petitioner faced, Judge Howell reviewed Counts One and Two separately, setting forth the elements twice and reviewing the statutory maximum terms of imprisonment applicable to each offense. [Id.]. With respect to the maximum term of imprisonment Petitioner faced as to each offense, Judge Howell advised Petitioner that the "[m]aximum possible penalty" for Count One was "a term of imprisonment of not less than 5 years nor more than 20 years," unless he had a prior conviction for certain sex or child pornography offenses, in which case the statutory maximum was 40 years. [Id. at 14-15]. Judge Howell then provided the same explanation for Count Two, and Petitioner affirmed that he understood this explanation. [Id. at 15-18]. After confirming his understanding of the minimum and maximum penalties for each offense to which he was pleading guilty, Petitioner admitted that he was, in fact, guilty of the acts described and wished to enter a voluntary guilty plea. [Id. at 22]. Petitioner also affirmed that he understood that he could receive a sentence that was higher or lower than that called for by the Sentencing Guidelines, and that if his sentence were more severe than he expected or

4

if the Court did not accept the Government's sentencing recommendations, he would remain bound by his guilty plea and would have no right to withdraw it. [Id. at 20].

Counsel for the Government then summarized the terms of the Plea Agreement, noting that Petitioner was "waiv[ing] all his appellate rights, save those explicitly reserved in the plea agreement, those being ineffective assistance of counsel claims, prosecutorial misconduct claims, or the reasonableness of any upward variances from the applicable guideline range." [Id. at 24]. Next, Judge Howell questioned Petitioner specifically as to whether Petitioner had discussed his right to appeal with his counsel and Petitioner's understanding of his right to challenge or contest his conviction or sentence in a post-conviction proceeding, and Petitioner responded that he had. [Id. at 24-25].

Petitioner also affirmed that he knowingly and willingly accepted the limitations on his right to appeal and file post-conviction proceedings, that he had had ample time to discuss possible defenses with his counsel, and that he was entirely satisfied with his counsel's services. [Id. at 25]. Petitioner also affirmed that he understood fully what he was doing and that he wanted his guilty plea to be accepted by the Court. [Id. at 26]. Finding

Petitioner's guilty plea to be knowing and voluntary, Judge Howell then accepted Petitioner's plea. [Id. at 27].

On March 25, 2008, the Probation Office submitted a Presentence Investigation Report ("PSR") in preparation for Petitioner's sentencing hearing, with revisions dated May 14, 2008 and June 16, 2008. With respect to the applicable offense level and Guidelines range of imprisonment, the Probation Officer began with a base offense level of 22. [Criminal Case No. 1:07-cr-00085-MR-1, Doc. 32: Revised Final PSR at 9]. The Probation Officer recommended the following enhancements: two levels because the offense involved a victim who was under twelve years of age; five levels for the distribution of child pornography for the receipt, or expectation of receipt of a thing of value, specifically, child pornography; four levels for the possession of pictures depicting violence; five levels for conduct depicting a "pattern of activity involving the sexual abuse or exploitation of a minor" and "sexual abuse or exploitation"; two levels for the use of a computer for the possession, transmission, receipt, or distribution of child pornography; and five levels because the offense involved more than 600 images of child pornography, yielding an adjusted offense level of 45. [Id. at 9-10]. Finally, the Probation Officer recommended a three-level reduction for acceptance of responsibility,

resulting in an adjusted offense level of 42. [Id. at 10]. Based on an offense level of 42 and a criminal history category of I, the Probation Officer determined that the applicable Guidelines range of imprisonment would be 360 months to life. [Id. at 15]. The Probation Officer then noted that Petitioner could not be sentenced on any individual count to more than 240 months' imprisonment but that, pursuant to Sentencing Guidelines §5G1.2(d), sentences on Counts One and Two could be imposed consecutively. Thus, with the combined sentences the Guideline range was 360 to 480 months. [Id.].

Petitioner filed eleven objections in response to the PSR. [Id. at 19]. Specifically, Petitioner "maintain[ed] that he never opened or viewed the vast majority of these images," that many of the images contained adult pornography, that Petitioner did "not recall any video of a rape," and that all of the images were downloaded for free and "thus did not fuel any market for this kind of material." [Id.]. With regard to Petitioner's photos of his ex-girlfriend's daughter, he object[ed] that "none of these images were traded online" and denied transmitting one of the images. [Id. at 20]. Based in part upon Petitioner's earlier objection that he deleted or never opened many of the images that he received, Petitioner "maintain[ed] [that] he did not knowingly possess 10,000 images of child pornography." [Id.].

Petitioner next objected to the five-level enhancement for trading images, stating that he did not send images with the "expectation of receipt" of other images and that he received no pecuniary gain. [Id. at 21]. He also objected to the four-level enhancement based on his possession of pictures with depictions of violence. Even though he acknowledged that "he did possess some images which would justify this increase," he asserted that "he did not ask for these particular pictures or videos and could not control the specific content of what was sent to him." [Id.]. Petitioner next objected to the five-level enhancement that was based on his having photographed his sexual abuse and exploitation of his ex-girlfriend's daughter. He argued that there was insufficient evidence of the pictures having been taken on more than one occasion. [Id.]. With regard to the five-level increase based on Petitioner's possession of more than 600 images of child pornography, Petitioner stated there was insufficient evidence as to the exact number of photos containing child pornography and whether he actually viewed such images. [Id. at 22]. Finally, Petitioner argued he should face a maximum term of only 240 months. [Id.].

The District Court, the Honorable Lacy H. Thornburg presiding, conducted Petitioner's sentencing hearing on June 26, 2008. [Criminal Case No. 1:07-cr-00085-MR-1, Doc. 42: Sent. Transcript at 1-33]. Through

counsel, Petitioner agreed that the evidence set out in the PSR established that there was a factual basis for his plea.  [Id. at 2].  Petitioner requested a downward departure and argued his numerous objections to the PSR, which the Court overruled.  [Id. at 3-15].  During his allocution, Petitioner apologized to the Court and stated that he was sorry.  [Id. at 15-16].  The Government did not move for an upward variance but asked the Court to deny Petitioner's motion for a downward variance and sentence Petitioner above the low end of the Guidelines range.  [Id. at 25].

Ultimately, the Court sentenced Petitioner to 240 months' imprisonment as to each of Counts One and Two, with the terms to run consecutively to the extent necessary for a total sentence of 360 months, the low end of the Guideline range. [Id. at 26-27].  The Court entered its Judgment on July 10, 2008.  [Criminal Case No. 1:07-cr-00085-MR-1, Doc. 36: Judgment].  Petitioner filed a timely notice of appeal.  [Id., Doc. 33: Notice of Appeal].

On appeal, Petitioner challenged his sentence, claiming that the Court failed to comply with the requirements of 18 U.S.C. § 3553, failed to credit Petitioner properly for his acceptance of responsibility, failed to make a factual determination as to whether Petitioner's exchange of child pornography was for value, and erroneously applied a five-level

enhancement. In response, the Government filed a motion to dismiss the appeal based on the appeal waiver in Petitioner's Plea Agreement. On February 12, 2009, the Fourth Circuit Court of Appeals granted the Government's motion, concluding that Petitioner "knowingly and voluntarily waived his right to appeal his sentence," and dismissed the appeal. United States v. Warren, No. 08-4691 (4th Cir. Feb. 12, 2009) (unpublished).

On February 10, 2010, Petitioner, through counsel, filed the present motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. In his motion, Petitioner asserts the following claims for relief: (1) ineffective assistance of counsel for incorrect advice regarding the Plea Agreement, specifically as to Petitioner's potential maximum sentence and for failing to object to an "unconstitutional provision" in the Plea Agreement; (2) ineffective assistance of counsel for failing to advise Petitioner regarding his rights under United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), specifically as to the effect of the waiver on Petitioner's appellate rights; and (3) ineffective assistance of counsel for failing to object to the Court's failure to provide an adequate explanation of its sentence.

## II.    STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a).  The rule goes on to provide the following procedures

for responding to a motion for summary judgment:

> c) Procedures.
>
> (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> (2) Objection That a Fact Is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be

> presented in a form that would be admissible in evidence.
>
> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
>
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues of fact for trial. Once the moving party has met that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.  Rather, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting Fed. R. Civ. P. 56).

The Court has considered the record in the matter and applicable authority and concludes that the disposition of the Government's motion for summary judgment can be resolved without an evidentiary hearing.  See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.  DISCUSSION

### A.    Government's Assertion of Waiver

In the Plea Agreement, Petitioner waived any right to appeal or seek collateral review on any grounds except (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) the reasonableness of any upward variances from the applicable Guideline range.  [Criminal Case No. 1:07-cr-00085-MR-1, Doc. 20: Plea Agreement at 4].   To the extent Petitioner asserts any claims other than ones for ineffective assistance of counsel[1], the Government seeks to enforce the waiver provision of the Plea Agreement.  [Doc. 8 at 10-11].

"[A] criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).  Here, the Fourth Circuit expressly concluded that Petitioner's decision to waive his

---

[1] Petitioner asserts no claims of prosecutorial misconduct in the present proceeding, and he was not subjected to any upward variances from the applicable Guideline range at sentencing.

right to appeal and challenge his sentence was knowing and voluntary. United States v. Warren, No. 08-4691 (4th Cir. Feb. 12, 2009) (unpublished). The Fourth Circuit's determination that Petitioner waived his right to contest his sentence precludes Petitioner's presentation of challenges to his sentence here, except to the extent that those challenges raise issues regarding effective assistance of counsel. See United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993) (holding that the law of the case doctrine "forecloses relitigation of issues expressly or impliedly decided by the appellate court."); see also Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) ("[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be relitigated in a collateral attack under Section 2255.").

### B. Ineffective Assistance of Counsel

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In measuring counsel's performance, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689,

104 S.Ct. 2052.  A petitioner seeking post-conviction relief bears a "heavy burden" to overcome this presumption.  <u>Carpenter v. United States</u>, 720 F.2d 546, 548 (8th Cir. 1983).  Conclusory allegations do not overcome the presumption of competency.  <u>Id.</u>

To demonstrate prejudice in the context of a guilty plea, a petitioner must be show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 366 (1985).

Petitioner "bears the burden of proving <u>Strickland</u> prejudice."  <u>Fields v. Attorney Gen. of Md.</u>, 956 F.2d 1290, 1297 (4th Cir. 1992) (citing <u>Hutchins v. Garrison</u>, 724 F.2d 1425, 1430-31 (4th Cir. 1983)).  If Petitioner fails to meet this burden, "a reviewing court need not consider the performance prong."  <u>Fields</u>, 956 F.2d at 1297 (citing <u>Strickland</u>, 466 U.S. at 697, 104 S.Ct. 2052).  In considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different.  <u>See</u> <u>Sexton v. French</u>, 163 F.3d 874, 882 (4th Cir. 1998).  Rather, the Court "can only grant relief under . . . <u>Strickland</u> if the 'result of the proceeding was fundamentally unfair or unreliable.'"  <u>Id.</u> (quoting

Lockhart v. Fretwell, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)).

### 1. Advice Regarding the Possible Sentence Under the Plea Agreement

Petitioner first argues that his counsel improperly advised him as to the sentence he would receive by entering into the Plea Agreement. Specifically, Petitioner claims that his attorney erroneously advised him that he faced only a maximum term of 240 months' imprisonment, and that had he known that he was exposed to a 30-year sentence, he would not have pled guilty and instead would have proceeded to trial. [Doc. 2 at 11-17].

This claim is entirely without merit. First, the transcript of the Rule 11 colloquy makes clear that Petitioner was advised by the Magistrate Judge of the 20-year maximum sentence he potentially faced for *each offense* to which he was pleading guilty, and that Petitioner confirmed his understanding of these potential penalties. Additionally, Petitioner affirmed in the Plea Agreement that he understood that any estimate of the sentence he would receive from *any source*, including defense counsel, was a prediction and not a promise and that the Court had the discretion to impose any sentence up to the statutory maximum for *each count*. Taken together, it is clear that Petitioner was plainly informed that he faced up to

20 years' imprisonment as to *each* of Counts One and Two and that the Court had the discretion to impose the maximum sentence for each count.

As the Fourth Circuit has recognized, even if a defendant is misadvised by his trial counsel, he cannot show prejudice as long as the misinformation that he received was later corrected by the district court. See United States v. Foster, 68 F.3d 86, 88 (4th Cir. 1995) (recognizing that "any misinformation [defendant] may have received from his attorney was corrected by the trial court at the Rule 11 hearing, and thus [defendant] was not prejudiced"); United States v. Lambey, 974 F.2d 1389, 1395 (4th Cir. 1992) (*en banc*) ("if the information given by the court at the Rule 11 hearing corrects or clarifies the earlier erroneous information given by the defendant's attorney and the defendant admits to understanding the court's advice, the criminal justice system must be able to rely on the subsequent dialogue between the court and defendant"). Here, the Magistrate Judge clearly advised Petitioner of the correct maximum penalties for each offense. Thus, even if Petitioner could establish that his counsel misadvised him, Petitioner cannot demonstrate any resulting prejudice.[2] Accordingly, this claim of ineffective assistance of counsel fails.

_____

[2] Furthermore, Petitioner's statement that he would not have pled guilty and would have proceeded to trial if he had known that he was exposed to a 30-year sentence is simply not credible. Petitioner faced a maximum sentence of 30 years on Count Nine and 20

## 2. Advice Regarding Possible Sentence by Proceeding to Trial

In his second claim, Petitioner argues that his attorney incorrectly advised him that he faced a term of life imprisonment by proceeding to trial, when in fact he faced a maximum term of only 50 years' imprisonment. [Doc. 2 at 17-19].

In response to Petitioner's argument, the Government submits the affidavit of Petitioner's trial counsel, David Belser. Mr. Belser asserts that he does not recall making a specific prediction of the sentence Petitioner could receive if he proceeded to trial but states that he did believe that Petitioner faced the possibility of a much higher sentence, based in part upon information from the Government's attorney that, had Petitioner proceeded to trial, additional charges may have been filed. [Affidavit of Counsel, Doc. 8-1 at ¶3]. Additionally, Mr. Belser makes clear that Petitioner's primary objective was to reduce his sentencing exposure, so whether he was advised that he faced a 50-year sentence or a life term, the

---

years on *each* of Counts One through Eight. As such, Petitioner would have faced a total maximum sentence of 190 years' incarceration if he had gone to trial on all of the counts with which he was charged.

decision to plead guilty and face a maximum of 40 years clearly benefitted Petitioner.[3]

Petitioner has shown nothing that would indicate that he would likely have taken this matter to trial if better advised. By entering into the Plea Agreement, Petitioner reduced his maximum exposure to forty years from a potential maximum of 190 years.[4] Moreover, the most serious charge, which alone carried a potential sentence of thirty years' imprisonment, was dismissed.[5] Petitioner has presented nothing that tends to show he was prejudiced by counsel's advice as to his maximum potential sentence if he went forward to trial. See United States v. Weymouth, 256 F. App'x 645, 648-50 (4th Cir. 2007) (unpublished) (holding defendant failed to demonstrate that he was prejudiced by any deficiency in his counsel's performance, notwithstanding counsel's advice that was "confusing and in some parts incorrect"). Petitioner has also failed to present any forecast of

---

[3] Considering that Petitioner was 34 years of age at the time of sentencing, even a 50-year term of imprisonment would have approached a life sentence.

[4] Petitioner appears to base this argument on the statement in the PSR [Criminal Case No. 1:07-cr-00085-MR-1, Doc. 26: PSR at 15] that if he had been convicted on all counts that the *Guideline range* would not have changed. [Doc. 2 at 17]. Apparently Petitioner confuses the upper end of the Guideline range with the statutory maximum sentence.

[5] In Count Nine, he was charged with producing child pornography in violation of 18 U.S.C. § 2251(a). The investigation revealed photographs Petitioner had taken of himself as he sexually abused his former girlfriend's four-year-old daughter.

evidence that counsel's advice on this point was deficient. For these reasons, this claim must be dismissed.

### 3. Failure to Object to Unconstitutional Provision in Plea Agreement

In his third claim, Petitioner alleges that Paragraph 21 of the Plea Agreement is "illusory and unconstitutional as an error in the guidelines would make any sentence imposed unreasonable," and therefore counsel's having allowed Petitioner to enter into the Plea Agreement constituted ineffective assistance. [Doc. 2 at 19-20]. Petitioner further argues that he was "forced . . . to agree to a guideline range determined by the *probation officer*" and therefore his plea is "invalid on its face." [Id. at 19]. Paragraph 21 of the Plea Agreement states as follows:

> The defendant stipulates that any sentence that falls within the applicable guideline range *as determined by the United States Probation Office* and pursuant to any departures from the applicable range as recommended by the government is *per se* reasonable. The defendant waives any right to contest such a sentence on the basis that the Court's imposition of such a sentence was unreasonable or an abuse of its discretion.

[Criminal Case No. 1:07-cr-00085-MR-1, Doc. 20: Plea Agreement at 5] (emphasis added). It appears that Petitioner's point is that that this provision impermissibly delegates a judicial function to the probation officer,

citing <u>Ex Parte United States</u>, 242 U.S. 27, 41, 37 S.Ct. 72, 74, 61 L.Ed. 129 (1916).

This claim is without merit. Petitioner did not waive his objections to the calculation of the Guideline range and there was no delegation of judicial authority. Petitioner lodged several objections to the enhancements applied in calculating the Guideline range. The Court heard and ruled on each of them. Indeed, at his Rule 11 hearing, Petitioner confirmed that he understood that the Court would ultimately determine his sentence after consulting the Guidelines. [Criminal Case No. 1:07-cr-00085-MR-1, Doc. 41: Rule 11 Tr. at 19]. Petitioner's argument is simply belied by the record. Even if the Plea Agreement *could* be construed as Petitioner argues, the fact remains that it was not. As such, Petitioner suffered no prejudice from the wording of Paragraph 21 or from counsel's allowing Petitioner to sign the Plea Agreement with that provision. For these reasons this claim must fail.

### 4. Failure to Advise Waiver of <u>Booker</u> Rights

Next, Petitioner argues that his counsel failed to advise him that Paragraph 19 of the Plea Agreement prevented him from appealing his sentence even "if the sentencing court failed to comply with, improperly applied, or made improper findings under the Sentencing Guidelines."

[Doc. 2 at 22-24]. In so arguing, Petitioner contends that Paragraph 19 "allows an appeal on the question of what the 'applicable guidelines' are," while Paragraph 21 of the Plea Agreement operates as a waiver of his Booker rights such that he could not challenge the calculation of his advisory Guidelines range. [Id. at 21-22]. Thus, Petitioner argues, Paragraphs 19 and 21 of the Plea Agreement are contradictory and amount to a violation of his rights guaranteed by United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). [Id.].

Contrary to Petitioner's argument, the third exception to the broader appeal waiver set forth in Paragraph 19 does not permit an appeal of what constitutes the applicable Guidelines range. Rather, this provision, by its terms, permits only a challenge to the "reasonableness of any upward variances from the applicable Guideline range." [Criminal Case No. 1:07-cr-00085-MR-1, Doc. 20: Plea Agreement at 4]. Paragraphs 19 and 21 act together to preclude an appeal from the determination of the applicable Guideline range or the reasonableness of any sentence that falls within the Guideline range but to permit an appeal from an upward variance from that range. Thus, these paragraphs are not contradictory, nor are they ambiguous.[6]

---

[6] It is noted that there was no upward variance from the Guideline range. In fact,

In his Affidavit submitted in support of the Government's Response, Mr. Belser attests that he discussed the waiver of Petitioner's appellate rights with him. Further, the Rule 11 colloquy, as discussed above, establishes Petitioner's understanding of that waiver insofar as Judge Howell recited the appeal waiver provisions to him and Petitioner affirmed his understanding of the same. The waiver provision is not ambiguous. It plainly applies to the alleged sentencing errors Petitioner asserted on appeal and in his present postconviction motion. As such, Petitioner has failed to show any deficient performance by counsel with respect to the appeal waiver.

### 5. Failure to Object to Sentencing Errors

In his final argument, Petitioner contends that his counsel was ineffective in failing to object to the Court's alleged errors at sentencing, including the Court's rulings against Petitioner. [Doc. 2 at 37-38]. On many of these points, however, Petitioner argues the alleged errors on their merits and challenges counsel's performance only to the extent that he purportedly failed to advise Petitioner adequately with respect to the impact of the appeal waiver and the fact that Petitioner was waiving his right to appeal any errors in the calculation of the Guideline range. As set forth

---

Petitioner received a sentence as the *low end* of the Guideline range.

above, however, Petitioner has not shown that counsel provided constitutionally deficient representation with respect to these issues. Thus, Petitioner's ineffective assistance of counsel claims with respect to each of these claims fails.

With respect to counsel's performance as it relates to other alleged sentencing errors, Petitioner asserts that counsel was ineffective in failing to argue in favor of a downward variance sentence on the basis that the 360-month sentence at the low end of the Guideline range would result in an unwarranted sentencing disparity among similarly situated defendants under § 3553(a)(6). More specifically, Petitioner argues that counsel should have cited the Court to various cases in which defendants convicted of "similar or worse" child pornography offenses were given sentences lower than Petitioner's. [Doc. 2 at 27-28]. In each of the cases cited by Petitioner, however, the defendant was sentenced either within the applicable Sentencing Guidelines range of imprisonment based on the characteristics of the offenses and his criminal history or to the applicable statutory mandatory minimum term of imprisonment. Thus, none of the defendants whose cases are cited by Petitioner are, in fact, similar to, or worse than, Petitioner, and any discernible sentencing disparity is therefore not unwarranted. Petitioner cannot show, therefore, that even if counsel

had cited these cases at sentencing, the Court would have imposed a downward variance sentence because of an unwarranted sentencing disparity.

Petitioner next argues that counsel was ineffective in failing to challenge the Court's application of the five-level enhancement under U.S.S.G. § 2G2.2(b)(3)(B) because this Court failed to find facts sufficient to support the conclusion that Petitioner's offenses involved the distribution of child pornography for the receipt, or expectation of receipt, of a thing of value.  Notwithstanding Petitioner's argument to the contrary, counsel *did* object to this enhancement, arguing that Petitioner did not distribute images with an "expectation of receipt" of other images, and further that he did not purchase any of the images, as they were sent to him for free.  Petitioner nevertheless challenges counsel's performance because when this objection was overruled, he failed to "argue the issue further."  [Doc. 2 at 33].  Petitioner's objection to this enhancement was adequately preserved by the objection itself, however, and there is no reason to believe that further argument on the issue would have convinced the Court to not apply the enhancement.  Petitioner, therefore, cannot show either deficient performance or prejudice with respect to this objection.  This claim of ineffective assistance of counsel is dismissed.

Finally, Petitioner complains that counsel was ineffective in failing to object to the adequacy of the Court's explanation of its sentence and specifically the Court's failure to "put any findings on the record to allow meaningful appellate review." [Doc. 2 at 38]. There is no evidence that challenging the adequacy of the explanation would have convinced this Court to impose a sentence below the Guidelines, and any error with respect to the adequacy of the explanation could not have succeeded on appeal because of the appeal waiver. Thus, even if counsel should have requested a more detailed explanation from the Court, Petitioner cannot show any prejudice resulting from counsel's performance.

A motion pursuant to 28 U.S.C. § 2255 cannot "do service for an appeal." Bousley v. United States, 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (quoting Reed v. Farley, 512 U.S. 339, 354, 114 S.Ct. 2291, 2300, 129 L.Ed.2d 277 (1994)). Petitioner's attempt to simply re-hash and reargue his case and appeal in the guise of a Motion under § 2255 is inappropriate and completely without merit.

## IV. CONCLUSION

For the reasons stated herein, the Court finds that Petitioner's claims in his Section 2255 motion are without merit and the Court will, therefore, grant Respondent's motion for summary judgment.

Finally, the Court finds that the Petitioner has not made a substantial showing of a denial of a constitutional right. <u>See generally</u> 28 U.S.C. § 2253(c)(2); <u>see also</u> <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (<u>citing</u> <u>Slack v. McDaniel</u>, 529 U.S. 473, 484-85, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). Petitioner has failed to demonstrate both that this Court's dispositive procedural rulings are debatable, and that his Motion to Vacate states a debatable claim of the denial of a constitutional right. <u>Slack v. McDaniel</u>, 529 U.S. 473, 484-85, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). As a result, the Court declines to issue a certificate of appealability. <u>See</u> Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

## O R D E R

**IT IS, THEREFORE, ORDERED** that Respondent's Motion for Summary Judgment [Doc. 9] is **GRANTED**, and Petitioner's § 2255 Motion [Doc. 2] is **DENIED** and **DISMISSED**.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed: March 29, 2013

Martin Reidinger
United States District Judge